UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| SHAI SHAWN TAMIR,                                )<br>                                                             )<br>           APPELLANT                            )<br>                                                             )<br>v.                                                          )<br>                                                             )<br>UNITED STATES TRUSTEE,              )<br>ET AL.,                                                 )<br>                                                             )<br>           APPELLEES                           ) | CIVIL NO. 2:15-CV-333-DBH |

**DECISION AND ORDER ON BANKRUPTCY APPEAL**

In 2014, the Maine Law Court ruled that a party seeking to foreclose a residential mortgage lacks standing when it holds the mortgage solely by virtue of an assignment from Mortgage Electronic Registry Systems (MERS). Bank of Am., N.A. v. Greenleaf, 2014 ME 89, ¶¶ 10-17, 96 A.3d 700.  A foreclosing party has to have "two documents—a promissory note and a mortgage securing that note," and "standing to foreclose involves the plaintiff's interest in both the note *and the mortgage*." Id. ¶ 9 (emphasis added).  With respect to the mortgage document at issue in Greenleaf, the Law Court held that the language of the mortgage granted MERS, as the lender's nominee, only the authority to *record* the homeowner's mortgage; it did not grant MERS the authority to *assign* the mortgage. Id. ¶¶ 13-17.  Thus, a foreclosing party whose purported ownership of a mortgage depends upon an assignment by MERS, without more, lacks standing because it is not a "mortgagee" within the meaning of Maine's foreclosure statute. Id. ¶ 14; see 14 M.R.S.A. § 6321 (2003 & Supp. 2015).

1

The repercussions of Greenleaf's standing requirement have been the subject of vigorous debate among members of the Maine bar. Compare John J. Aromando, *Standing to Foreclose in Maine: Bank of America, N.A. v. Greenleaf*, 29 Me. Bar J. 186, 188 (2014) (criticizing the Law Court's analysis in Greenleaf by stating that it is "illogical to require 'ownership' of the mortgage, separate and distinct from the note, as a condition of standing to foreclose. Maine law has been clear on this for many years: the mortgage follows the note"), with Thomas A. Cox & L. Scott Gould, *In Defense of Greenleaf: A Response to Standing to Foreclose*, 30 Me. Bar. J. 18, 21 (2015) (defending Greenleaf as "entirely consistent with long-standing Maine common law precedent, with Maine's commercial code, with Maine's statute of frauds, and with Maine's civil action foreclosure statutes"). After Greenleaf, the Maine Legislature enacted new legislation clarifying the authority of nominee mortgagees like MERS to execute assignments, discharges, and partial releases. P.L. 2015, ch. 289, § 1 (effective Oct. 15, 2015) (codified at 33 M.R.S.A. § 508 (Pamph. 2015) (applying only to assignments that are the subject of a final foreclosure judgment).

This appeal from a bankruptcy judge's ruling in a Chapter 11 bankruptcy proceeding tests how Greenleaf affects bankruptcy law. Specifically, does Greenleaf prevent a creditor from having secured claim status when its claim is secured by a mortgage assigned from MERS? I take the facts (they are undisputed) from the Bankruptcy Court's findings under Fed. R. Bankr. P. 7052 and the judicial record. I heard oral argument on January 20, 2015.

**FACTS AND PROCEDURAL BACKGROUND**

Shai Shawn Tamir filed a Chapter 11 petition with the Bankruptcy Court of this District. His schedules of assets and liabilities included mortgaged apartment buildings. Under Schedule D (creditors holding secured claims), Tamir listed—as disputed—HSBC Bank and Citibank.[1] Thereafter, each bank filed a proof of claim (POC) asserting its secured claim, and Tamir filed an omnibus objection to the claims under Fed. R. Bankr. P. 3007(d). Based on the Law Court's holding in Greenleaf, Tamir argued that the bank creditors could not hold secured claims against him because they lacked standing to foreclose given that each held its mortgage by assignment from MERS.

The Bankruptcy Court ultimately overruled Tamir's objection and allowed the banks' amended POCs as secured claims,[2] reasoning that the fact that the banks "may not have standing to foreclose their mortgages on [Tamir's] properties is not a basis for determining the validity of their secured claims in this chapter 11 case." Bankr. D. Me. Mem. of Decision at 5 (ECF No. 1-2). The Bankruptcy Court concluded that "[f]or purposes of asserting a secured claim in a borrower's bankruptcy case[,] a noteholder's beneficial ownership of the mortgage is sufficient to establish secured status." Id. at 6-7. This timely appeal followed.

---

[1] A claim by Bank of America is no longer in dispute. See Br. of Appellant at 1 (ECF No. 7).
[2] The Bankruptcy Court first sustained Tamir's objection, then after further filings overruled it. Bankr. D. Me. Mem. of Decision at 3 (ECF No. 1-2). Tamir is not appealing the Bankruptcy Court's acceptance of the banks' supplemental filings, only the substance of its ruling.

**STANDARD OF REVIEW**

I review the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. Davis v. Cox (In re Cox), 356 F.3d 76, 82 (1st Cir. 2004); In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72, 73 (1st Cir. 1995); see In re Catton, 542 B.R. 33, 35-36 (D. Mass. 2015).  Here, because the "decision hinges on an interpretation of the Bankruptcy Code, it presents a question of law (and, thus, engenders de novo review)." In re Bank of N. Eng. Corp., 364 F.3d 355, 361 (1st Cir. 2004) (citing United States v. Yellin (In re Weinstein), 272 F.3d 39, 42 (1st Cir.2001)).[3]

**ANALYSIS**

*(A) Standing*

On appeal, the banks challenge Tamir's standing. I reject Tamir's contention that the banks waived that issue by failing to raise it in the Bankruptcy Court.  "[S]tanding is a jurisdictional issue that may be raised at any time." In re Torres Martinez, 397 B.R. 158, 163 (B.A.P. 1st Cir. 2008); see In re Great Rd. Serv. Ctr., Inc., 304 B.R. 547, 550 (B.A.P. 1st Cir. 2004) ("[Q]uestions of standing must be considered sua sponte, as it is akin to subject matter jurisdiction." (alteration in original) (quoting another source)).  "[W]hen the lower court has not undertaken the required inquiry, the appellate court must do so." In re Great Rd. Serv. Ctr., Inc., 304 B.R. at 550; see In re Furlong, 660 F.3d 81, 86 (1st Cir. 2011) ("Where the issue of standing was not raised

---

[3] The debtor Tamir agrees that the issues presented on appeal engender de novo review.  The creditors have not specified the standard of review, except to argue that the Bankruptcy Court's decision to entertain the amended POCs should be reviewed for abuse of discretion.  Although the creditors are correct on that score, see In re Hemingway Transp., Inc., 954 F.2d 1, 10 (1st Cir. 1992), that issue is not before me.

4

below, this Court must undertake the inquiry without remanding."); see also Spenlinhauer v. O'Donnell, 261 F.3d 113, 120 (1st Cir. 2001). But I do conclude that Tamir has standing.

"Bankruptcy standing is narrower than Article III standing." In re Great Rd. Serv. Ctr., Inc., 304 B.R. at 550; Spenlinhauer, 261 F.3d at 117.[4] "Under the Bankruptcy Code, standing to appeal from a final bankruptcy court order is accorded only to a 'person aggrieved.'" Spenlinhauer, 261 F.3d at 117. "The 'person aggrieved' paradigm . . . bestows standing only where the challenged order directly and adversely affects an appellant's pecuniary interests." Id. at 117-18 (footnote omitted) (citations omitted); see In re Formatech, Inc., 483 B.R. 363, 367-68 (B.A.P. 1st Cir. 2012). "A 'person aggrieved' is one whose property is diminished, burdens are increased, or rights are impaired by order on appeal." In re Great Rd. Serv. Ctr., Inc., 304 B.R. at 550; In re Arroyo, 489 B.R. 486, 488 (B.A.P. 1st Cir. 2013).

Whether an appellant is a "person aggrieved" is ordinarily a question of fact, see Spenlinhauer, 261 F.3d at 118; 1-5 Collier on Bankruptcy ¶ 5.07 n.1 (15th ed. 2015), but where the relevant facts are undisputed, courts may treat the question as an issue of law, cf. In re El San Juan Hotel, 809 F.2d 151, 154 n.3 (1st Cir. 1987). See also Spenlinhauer, 261 F.3d at 118 ("[P]rovided the appellate record discloses the requisite facts, we may address the matter without remanding.").

---

[4] Because Tamir meets both standards, this is not the place to go into the reasons for the different standards.

5

Tamir argues that he has standing to appeal the Bankruptcy Court's order allowing Citibank's and HSBC's secured claims because those claims affect his reorganization efforts in bankruptcy. See Reply Br. of Appellant at 2-3 (ECF No. 10).

Unlike Chapter 7 debtors who generally lack standing to object to an order concerning distribution of estate assets because they lack a pecuniary interest in those assets (*i.e.,* no matter how the estate's assets are distributed by the trustee, assets will rarely revert to the debtor, see 11 U.S.C.A. § 726(a)(1)-(6) (2004 & Supp. 2015); Spenlinhauer, 261 F.3d at 118-20), Chapter 11 debtors are generally seeking to emerge from bankruptcy as viable, profitable individuals or enterprises. True, the Chapter 11 processes bear no certainty, and many reorganization efforts ultimately prove impracticable, but the primary goal of Chapter 11 remains: to formulate a comprehensive reorganization plan that will ultimately rehabilitate financially distressed debtors. In re FBI Distrib. Corp., 330 F.3d 36, 41 (1st Cir. 2003) ("The paramount objective of a Chapter 11 reorganization is to rehabilitate and preserve the value of the financially distressed business."); see 11 U.S.C.A. §§ 1121-1141 (2004 & Supp. 2015).

Whether a creditor's claim is classified as secured or unsecured in a Chapter 11 reorganization plan has significant financial consequences for both the debtor and the creditor. Secured creditors stand in a superior position to unsecured creditors. Among other procedural protections and tactical advantages, secured creditors have the benefit of adequate protection, see 11 U.S.C.A. § 361 (2004 & Supp. 2015); may request stay relief if their underlying security interest is diminishing in value or otherwise in jeopardy, see 11 U.S.C.A.

§§ 362-363 (2004 & Supp. 2015); may be entitled to receive, if their claims are oversecured, interest and attorneys' fees under their respective agreements with a debtor to the extent that the claim is oversecured, see 11 U.S.C.A. § 506(b) (2004 & Supp. 2015); and, even under a so-called "cramdown" of a debtor's proposed plan, must be given "fair and equitable" treatment under the plan, which the Code specifically defines, see 11 U.S.C.A. § 1129(b)(2)(A)(i)-(iii) (2004 & Supp. 2015). See, e.g., RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2069-73 (2012) (holding that a Chapter 11 cramdown plan that provides for the sale of collateral free and clear of a secured creditor's lien, but does not permit the secured creditor to credit-bid at the sale is not capable of confirmation under the "fair and equitable" standard of section 1129(b)(2)(A)). See generally Prof. John D. Ayer et. al., What Every Secured Creditor (and Its Lawyer) Should Know About Chapter 11, 22-Nov. AM. BANKR. INST. J. 22 (2003) (discussing the concerns and strategies of secured creditors in Chapter 11 cases); Prof. John D. Ayer et. al., What Every Unsecured Creditor Should Know About Chapter 11, 23-Jun. AM. BANKR. INST. J. 16 (2004) (discussing the concerns and strategies of unsecured creditors in Chapter 11 cases).

  Because a debtor's Chapter 11 reorganization plan represents the vehicle by which the debtor accomplishes his financial rehabilitation, and because the different classifications of creditors, claims, and interests can significantly influence a plan's success, I conclude that the Bankruptcy Court's order allowing the banks' claims to proceed as secured claims over Tamir's objection affects his pecuniary interest. Therefore, he has standing to pursue this appeal. Cf. Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 289-91 (1st Cir. 2013)

(holding, outside of the bankruptcy arena, "that a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void"); Beck v. Fed. Nat'l Mortg. Ass'n, No. 2:13-cv-00090-JAW, 2013 WL 3883846, at *6 (D. Me. July 26, 2013) (holding, again outside the bankruptcy arena, that the plaintiffs had standing to challenge the validity of their mortgage even without a pending foreclosure proceeding). But see In re Jackson, No. 10-11716-MSH, 2013 WL 6903752, at *7 (Bankr. D. Mass. Dec. 31, 2013) (holding under a different analysis that the debtor lacked standing to object to a creditor's proof of claim on the basis that one or more of the mortgage assignments in its chain of ownership was void).

I turn therefore to whether the Bankruptcy Court properly allowed the banks' claims as secured claims.

### (B) Secured Status and Greenleaf

Tamir argues that the Code requires disallowance of HSBC's and Citibank's secured claims because they are "unenforceable against the debtor and property of the debtor." 11 U.S.C.A. § 502(b)(1). Specifically, he argues that because of Greenleaf these creditors now lack standing to foreclose, and therefore their claims should be disallowed under section 502(b)(1).[5] Br. of Appellant at 10-13 (ECF No. 7).

The "basic federal rule in bankruptcy is that state law governs the substance of claims," Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,

---

[5] Section 502 of Title 11 of the United States Code states, in relevant part, that a properly proven claim shall be allowed "except to the extent that—(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. . . ."

8

549 U.S. 443, 450 (2007) (quotation marks omitted), "subject to any qualifying or contrary provisions of the Bankruptcy Code," id. (quotation marks omitted). "Accordingly, when the Bankruptcy Code uses the word 'claim'—which the Code itself defines as a 'right to payment,'—it is usually referring to a right to payment recognized under state law." Id. at 451 (quoting 11 U.S.C.A. § 101(5)(A)); see F.C.C. v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 303 (2003) ("[P]lain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation." (quoting Pennsylvania Dep't. of Pub. Welfare v. Davenport, 495 U.S. 552, 559 (1990))). Because a mortgage note is a negotiable instrument, see 11 M.R.S.A. § 3-1104 (2014), the enforceability of HSBC's and Citibank's interests in the notes is governed by Maine's Uniform Commercial Code, see 11 M.R.S.A. § 3-1301 (2014 & Supp. 2015). Section 3-1301 permits a party to enforce a note if it is the "holder" of the note; that is, if it is in possession of the original note that is indorsed in blank. 11 M.R.S.A. § 1-1201(5), 21(a) (2014 & Supp. 2015); 11 M.R.S.A. § 3-1301(1).

Tamir concedes that HSBC and Citibank have a right to payment: "There is no dispute that as of the Petition Date the Debtor was indebted to the [creditors] on account of the Notes in ascertainable amounts that were immediately due and owing." Br. of Appellant at 11 (ECF No. 7). As a result, each has an allowable claim under section 502(b)(1). The issue is whether they have *secured* claims—an inquiry properly governed by section 506 of the

9

Bankruptcy Code ("Determination of secured status"), not section 502 ("Allowance of claims or interests").[6]

Section 506 of the Code provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." 11 U.S.C.A. § 506(a). In turn, the Code defines a "lien" as a "charge against an interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C.A. § 101(37) (2004 & Supp. 2015). The issue is whether the banks' claims fit this definition.

Under Maine law, separation of the mortgage from the note does not nullify or void either instrument; rather,

> [o]ne who takes a mortgagee's title holds it in trust for the owner of the debt to secure which the mortgage was given. If a mortgage is given to secure negotiable promissory notes, and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holder of the notes.

Jordan v. Cheney, 74 Me. 359, 361 (1883). Thus, "[i]f the note was assigned, and the mortgage was not, the assignee has an interest in the mortgage which

---

[6] The Eleventh Circuit aptly described the relationship of these two sections of the code as follows:
> Language and structure thus demonstrate that §§ 502 and 506 should be read in tandem with one another, for they address complementary but different questions. Section 502 deals with the threshold question of whether a claim should be allowed or disallowed. Once the bankruptcy court determines that a claim is allowable, § 506 deals with the entirely different, more narrow question of whether certain types of claims should be considered secured or unsecured.

Welzel v. Advocate Realty Invs., LLC (In re Welzel), 275 F.3d 1308, 1317-18 (11th Cir. 2001); see also 4 Collier on Bankruptcy ¶ 506.01 (15th ed. 2001) ("Although section 506 supplies a number of important rules specifying the determination of the secured status of a claim, the section does not govern the allowance or disallowance of the underlying claim itself. Rules governing the allowance of claims generally are provided in section 502.").

10

will be protected by equity." Cowan & Scannell, *Maine Real Estate Law and Practice* § 13:2 (2d ed. 2007). In other words, "the security follows the debt." Wyman v. Porter, 108 Me. 110, 120, 79 A. 371, 374 (1911); 11 M.R.S.A. § 9-1203(7) U.C.C. cmt. 9 (2014 & Supp. 2015) (stating that Maine's Uniform Commercial Code "codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien"); RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 5.4(a) (AM. LAW INST. 1997) ("A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.").

So how does the Greenleaf ruling on standing to bring a foreclosure action affect the creditors' secured status in this Chapter 11 bankruptcy case? The short answer, given the procedural posture, is that it does not. I agree with the Bankruptcy Court that the fact that at this date Tamir's creditors "may not have standing to foreclose their mortgages on his properties is not a basis for determining the validity of their secured claims in this chapter 11 case." Bankr. D. Me. Mem. of Decision at 5 (ECF No. 1-2). There is no foreclosure case currently pending in state court; neither creditor has moved for relief from the automatic stay to proceed with a foreclosure action; there is no suggestion that they are unable to obtain a proper assignment of the mortgages if necessary; and neither creditor may ever need to foreclose on the properties if Tamir can successfully reorganize and emerge from bankruptcy—the ultimate goal of Chapter 11. See In re Vienna Park Props., 976 F.2d 106, 113 (2d Cir. 1992) ("An

inquiry into the present enforceability of a security interest is not relevant to whether that interest exists as an initial matter.").

## CONCLUSION

Tamir does not dispute that HSBC and Citibank hold the original notes—the primary instruments—evidencing his obligation to them. Nor does he dispute that the estate's real estate is encumbered by valid mortgages—the secondary instruments. I agree with the Bankruptcy Court that for the purpose of determining whether a claim is a secured claim in a bankruptcy proceeding, even after Greenleaf, "the mortgage follows the note." 11 M.R.S.A. § 9-1308 U.C.C. cmt. 6 (2014 & Supp. 2015).[7] I therefore **AFFIRM** the Bankruptcy Court's decision.

**SO ORDERED.**

**DATED THIS 22ND DAY OF JANUARY, 2016**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[7] Tamir also argues that any security interest the banks hold is in non-estate property, *i.e.*, a security interest in the mortgage instruments, not in the real estate, presumably because the banks can compel an assignment of the mortgage instruments but have not yet done so. Tamir did not raise this argument in the Bankruptcy Court, and he has therefore waived it. See In re Net-Velazquez, 625 F.3d 34, 40-41 (1st Cir. 2010). In any event, the argument does not impugn the Bankruptcy Court's conclusion that Tamir has debt secured by the estate's real estate and that for present purposes the banks hold the secured debt.

12